UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MERCEDES LOPEZ-PINEDA,        ) | CASE NO. C07-1290-TSZ |
|                               ) | |
| Petitioner,                   ) | |
|                               ) | |
| v.                            ) | REPORT AND RECOMMENDATION |
|                               ) | |
| A. NEIL CLARK, et al.,        ) | |
|                               ) | |
| Respondents.                  ) | |
|                               ) | |

## I. INTRODUCTION AND SUMMARY CONCLUSION

Petitioner Mercedes Lopez-Pineda, proceeding pro se, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, challenging the lawfulness of his detention by the U.S. Immigration and Customs Enforcement ("ICE"). (Dkt. #8). Respondents have filed a Return and Motion to Dismiss, arguing that petitioner is lawfully detained under Section 241 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231, and that his detention does not violate *Zadvydas v. Davis*, 533 U.S. 678 (2001), because he has acted to prevent his removal. (Dkt. #16). Alternatively, respondents argue that petitioner's detention is mandated by INA § 236(c), 8 U.S.C. § 1226(c), because he was convicted of a controlled substance offense. (Dkt. #16).

Having carefully reviewed the entire record, I recommend that petitioner's habeas petition (Dkt. #8) be DENIED and that respondents' motion to dismiss (Dkt. #16) be GRANTED.

## II. BACKGROUND AND PROCEDURAL HISTORY

Petitioner is a native and citizen of El Salvador who entered the United States without inspection at San Ysidro, California, on or about March 20, 1993. (Dkt. #19 at R60-61). On June 2, 1997, petitioner was apprehended by the former Immigration and Naturalization Service[1] near Fortine, Montana, while working as a tree planter for Quality Forest, Inc. (Dkt. #19 at R23-25). Upon review of petitioner's legalization file, agents discovered that petitioner had applied for political asylum in August 1993, but that the application was never adjudicated. *Id.* The INS served petitioner with a Notice to Appear, charging him as inadmissable under INA § 212, for entering the United States without being admitted or paroled. (Dkt. #19 at R26). Petitioner was released on bond in the amount of $1,500. (Dkt. #19 at L12). Petitioner's removal proceedings were subsequently cancelled pursuant to 8 C.F.R. § 239.2(a)(6) because the Notice to Appear was "improvidently issued." (Dkt. #19 at L16).

On August 28, 2002, petitioner was convicted in Lewis County Superior Court of possession of a controlled substance (methamphetamine), and was ordered to pay restitution and sentenced to 45 days confinement followed by 24 months community service. (Dkt. #19 at R101-07, L45-61). On February 19, 2003, a petition was filed in Lewis County Superior Court alleging that petitioner had violated the terms of his Judgment and Sentence. On April 21, 2003, petitioner

---

[1] Effective March 1, 2003, the Immigration and Naturalization Service was abolished pursuant to the Homeland Security Act of 2002, 116 Stat. 2135, Pub. L. 107-296, *codified at* 6 U.S.C. § § 101, *et seq.*, and its immigration functions were transferred to the Department of Homeland Security ("DHS").

signed an Agreed Order Modifying the Sentence that required him to appear in Court on December 4, 2003, for a final disposition of the matter. (Dkt. #19 at L52). Petitioner failed to appear as directed and a bench warrant was issued for his arrest. (Dkt. #19 at L50). Petitioner was arrested on May 31, 2004, and was taken into custody by the Lewis County Department of Corrections. (Dkt. #19 at R91). On June 30, 2004, petitioner was convicted in Lewis County Superior Court of Bail Jumping, and was ordered to pay restitution and sentenced to twelve months and one day of confinement to be served concurrently with his prior sentence. (Dkt. #19 at R100-07, L92).

On November 9, 2004, ICE served petitioner with a Notice to Appear, charging him with removability from the United States under INA § 212(a)(6)(A)(i), for being present in the United States without being admitted or paroled, and under INA § 212(a)(2)(A)(i)(II), for having been convicted of a crime relating to a controlled substance. (Dkt. #19 at L20-22). On April 26, 2006, petitioner was released from state custody and taken directly into ICE custody. (Dkt. #19 at R123, L18-19).

On June 22, 2006, petitioner appeared for an individual hearing before an Immigration Judge ("IJ") and admitted the allegations contained in the Notice to Appear and conceded his removability, but applied for relief from removal in the form of asylum, withholding of removal, and withholding under the Convention Against Torture ("CAT"). (Dkt. #19 at L115-16). The IJ found petitioner ineligible for any relief from removal, and ordered him removed to El Salvador. (Dkt. #19 at L95-97, L131-41). Petitioner waived his right to appeal the IJ's decision. (Dkt. #19 at L94). Accordingly, petitioner's order of removal became administratively final on June 22, 2006.

REPORT AND RECOMMENDATION
PAGE -3

01   Despite having waived his right to appeal, petitioner filed an appeal of the IJ's decision to
02 the Board of Immigration Appeals ("BIA") on July 24, 2006. (Dkt. #19 at L147). On September
03 15, 2006, the BIA dismissed petitioner's appeal, noting that "[u]pon review, we find that this case
04 is not properly before us, as [petitioner] has made no argument that the decision to waive appeal
05 was not a knowing and intelligent one. Thus, the Immigration Judge's decision became
06 administratively final upon the [petitioner's] waiver of the right to appeal, and the Board lacks
07 jurisdiction over this case." (Dkt. #19 at L161). Petitioner filed a Petition for Review of the
08 BIA's decision with the Ninth Circuit Court of Appeals, along with a motion for stay of removal.
09 *See Lopez-Pineda v. Gonzales*, No. 06-74895 (9th Cir. filed Oct. 16, 2006). Under Ninth Circuit
10 General Order 6.4(c)(1)(3), this caused a temporary stay of removal to automatically issue.
11 However, the Ninth Circuit denied and dismissed the petition and the mandate issued on May 15,
12 2007. *Id.*

13   On March 26, 2007, while his Petition for Review was pending, petitioner filed a Petition
14 for Writ of Habeas Corpus in this Court, challenging his detention.   *See Lopez-Pineda v.*
15 *Gonzales*, Case No. 07-446-RSL-MAT. The habeas petition was dismissed on June 25, 2007.
16 *Id.* On July 23, 2007, petitioner filed another Petition for Review with the Ninth Circuit along
17 with a motion for stay of removal.   *See Lopez-Pineda v. Mukasey*, No. 07-72882 (9th Cir.).
18 Under Ninth Circuit General Order 6.4(c)(1)(3), this caused a temporary stay of removal to
19 automatically issue. Petitioner's Petition for Review is still pending, and the stay of removal
20 remains in effect.

21   On August 17, 2007, petitioner filed the instant habeas petition, which appears to be
22 identical to his previously filed habeas petition. (Dkt. #8). On October 22, 2007, respondents

REPORT AND RECOMMENDATION
PAGE -4

filed a Return and Status Report and Cross-Motion to Dismiss. (Dkt. #16). Petitioner filed a response on November 20, 2007, Dkt. #20, and respondents filed a reply on December 3, 2007, Dkt. #22. Petitioner's habeas petition is now ready for review.

## III. DISCUSSION

Section 236 of the INA provides the framework for the arrest, detention, and release of aliens in removal proceedings. Once removal proceedings have been completed, detention and release of the alien shifts to INA § 241. The determination of when an alien becomes subject to detention under Section 241 rather than Section 236 is governed by Section 241(a)(1). Section 241(a)(1)(B) provides that:

> The removal period begins on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B). Thus, pursuant to Section 241(a)(1)(B)(ii), where a court issues a stay of removal pending its review of an administrative removal order, the alien continues to be detained under Section 236 until the court renders its decision. *See Tijani v. Willis,* 430 F.3d 1241, 1242 (9th Cir. 2005) (ordering a bail hearing where the alien had been detained pending appeal for two years and eight months under INA § 236(c)); *see also Bromfield v. Mukasey*, Case No. 08-09-JLR-JPD (Dkt. #17, Part 1) (*Bromfield v. Mukasey*, No. 07-72319, slip op. (9th Cir. Dec. 26, 2007) ("[T]his is a pre-removal case, given that petitioner requested judicial review of the removal order . . . and this court granted a stay of removal in that still pending petition for

REPORT AND RECOMMENDATION
PAGE -5

review. *See* 8 U.S.C. § 1231(a)(1)(B)(ii).")). Here, the Ninth Circuit has issued a stay of removal pending its review of petitioner's removal order. "Because Petitioner's removal order has been stayed by the Ninth Circuit pending its review of the BIA decision, the 'removal period' has not yet commenced, and Petitioner therefore is detained pursuant to INA § 236." *Quezada-Bucio v. Ridge*, 317 F. Supp. 2d 1221, 1224 (W.D. Wash. 2004).

Section 236(c)(1) directs the Attorney General to take into custody any alien who:

(A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,

(B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,

(C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence [sic] to a term of imprisonment of at least 1 year, or

(D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title, when the alien is released . . .

INA § 236(c), 8 U.S.C. § 1226(c) (emphasis added). In this case, petitioner was ordered removed from the United States pursuant to INA § 212(a)(2)(A)(i)(II), 8 U.S.C. § 1182(a)(2)(A)(i)(II). Thus, petitioner falls squarely within the group of aliens described in INA § 236(c)(1)(B), for whom detention is mandatory.

Petitioner argues that his mandatory detention under INA § 236(c) violates his due process rights, and that he is entitled to release from detention because he is not a flight risk or danger to society. Petitioner further argues that his detention is unlawfully lengthy under *Zadvydas v. Davis*, 533 U.S. 678, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001); *Tijani v. Willis*, 430 F.3d 1241 (9th Cir. 2005); and *Nadarajah v. Gonzales*, 443 F.3d 1069, 1075 (9th Cir. 2006), and that he must

REPORT AND RECOMMENDATION
PAGE -6

Case 2:07-cv-01290-TSZ    Document 24    Filed 01/23/08    Page 7 of 12

be released because there is no significant likelihood that he will be removed in the reasonably foreseeable future.

*Zadvydas* concerned the indefinite detention of aliens pursuant to the post-removal-order detention statute, INA § 241(a), 8 U.S.C. § 1231(a), following a final order of removal. Section 241(a)(1)(A) states that "[e]xcept as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." INA § 241(a)(1)(A), 8 U.S.C. § 1231(a)(1)(A). The removal period begins on the latest of the following:

(i) The date the order of removal becomes administratively final.

(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B). During the removal period, continued detention is required. INA § 241(a)(2), 8 U.S.C. § 1231(a)(2) ("During the removal period, the Attorney General shall detain the alien."). Under Section 241(a)(6), the Attorney General may detain an alien beyond the 90-day removal period. 8 U.S.C. § 1231(a)(6).

In *Zadvydas*, the Supreme Court considered whether INA § 241(a)(6) authorizes the government "to detain a removable alien *indefinitely* beyond the removal period or only for a period *reasonably necessary* to secure the alien's removal." *Zadvydas,* 533 U.S. at 682. The petitioners in *Zadvydas* could not be removed because no country would accept them. Thus, removal was "no longer practically attainable," and the period of detention at issue was "indefinite" and "potentially permanent." *Id.* at 690-91. The Supreme Court held that INA §

REPORT AND RECOMMENDATION
PAGE -7

01 | 241(a)(6), which permits detention of removable aliens beyond the 90-day removal period, does

02 | not permit "indefinite detention." *Id.* at 689-697. The Court explained that "once removal is no

03 | longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

04 |       The Supreme Court further held that detention remains presumptively valid for a period

05 | of six months. *Id.* at 701. After this six-month period, an alien is eligible for conditional release

06 | upon demonstrating "good reason to believe that there is no significant likelihood of removal in

07 | the reasonably foreseeable future." *Id.* at 701. The burden then shifts to the Government to

08 | respond with sufficient evidence to rebut that showing. *Id*. at 701. The six-month presumption

09 | "does not mean that every alien not removed must be released after six months. To the contrary,

10 | an alien may be held in confinement until it has been determined that there is no significant

11 | likelihood of removal in the reasonably foreseeable future." *Id.* at 701.

12 |       As noted, *Zadvydas* addressed the length of time beyond the removal period that an alien

13 | may be held in detention. Here, however, petitioner is being detained pursuant to a different

14 | statute, INA § 236(c), because his removal order is not yet final. *See* INA § 241(a)(1)(B) ("The

15 | removal period begins on the latest of the following: . . . (i) The date the order of removal

16 | becomes administratively final."). Accordingly, petitioner does not face indefinite detention, and

17 | the holding of *Zadvydas*, with respect to the length of time an alien may be held in detention, does

18 | not apply to petitioner's case at this time. *See Demore v. Kim*, 538 U.S. 510, 512, 123 S. Ct.

19 | 1708, 155 L. Ed. 2d 724 (2003).

20 |       In *Kim*, a lawful permanent resident of the United States argued that his detention under

21 | INA § 236(c) violated the Due Process Clause of the Fifth Amendment because the Government

22 | had made no determination that he posed either a flight risk or a danger to society. *Id.* at 514.

01  The Supreme Court held that mandatory detention pursuant to § 236(c) was constitutional for the

02  brief period necessary for removal proceedings. *Kim*, 538 U.S. at 512. The Supreme Court found

03  that "[s]uch detention necessarily serves the purpose of preventing deportable criminal aliens from

04  fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered

05  removed, the aliens will be successfully removed." *Id.* at 528.

06  Kim also argued unpersuasively that his detention under INA § 236(c) violated due process

07  under *Zadvydas*. The Supreme Court distinguished *Zadvydas*, pointing out that "*Zadvydas* is

08  materially different from the present case in two respects. First, in *Zadvydas*, the aliens

09  challenging their detention following final orders of deportation were ones for whom removal was

10  'no longer practically attainable.'" *Id.* at 527.  Second, "[w]hile the period of detention at issue

11  in *Zadvydas* was 'indefinite' and 'potentially permanent,' . . . the detention here is of a much

12  shorter duration." *Id.* at 528. " *Zadvydas* distinguished the statutory provision it was there

13  considering from § 1226 on these very grounds, noting that 'post-removal-period detention, *unlike*

14  *detention pending a determination of removability* . . ., has no obvious termination point." *Id.*

15  at 529 (quoting *Zadvydas*, 533 U.S. at 697). The Supreme Court concluded that *Zadvydas* was

16  not controlling and that a brief detention under INA § 236(c) to complete removal proceedings

17  does not violate due process. *Kim*, 538 U.S. at 531.

18  The reasons for petitioner's detention in this case also differ significantly from those in

19  *Tijani*. In *Tijani*, the petitioner, detained pursuant to INA § 236(c), sought by habeas proceedings

20  to compel a bond hearing. *Tijani*, 430 F.3d at 1242. At the time of the Ninth Circuit's decision,

21  Tijani had been detained for two years and four months pending removal proceedings. *Tijani*, 430

22  F.3d at 1246 (Tashima, J., concurring) (noting that Tijani's detention during his administrative

REPORT AND RECOMMENDATION
PAGE -9

proceedings lasted twenty months, with one year of continued detention during judicial appeal).

In a brief (three paragraph) opinion, the Ninth Circuit stated that "it is constitutionally doubtful that Congress may authorize imprisonment of this duration for lawfully admitted resident aliens who are subject to removal." *Tijani*, 430 F.3d at 1242. Nevertheless, to avoid deciding the constitutional issue, the court construed § 236(c) as applying only in "expedited" removal proceedings. *Id.* The Ninth Circuit concluded that "[t]wo years and four months of process is not expeditious," and ordered an Immigration Judge to release the petitioner "unless the government establishes that he is a flight risk or will be a danger to the community." *Id.* In a concurring opinion, Judge Tashima concluded that Tijani was entitled to be released from detention pending the completion of his removal proceedings because the sheer length of his detention had become unreasonable. *See id.* at 1249-50 (Tashima, J., concurring) (citing *Zadvydas*, 533 U.S. at 690; *Demore v. Kim*, 538 U.S. 510, 527, 123 S. Ct. 1708, 155 L. Ed. 2d 724 (2003).

Here, however, unlike Tijani whose twenty month administrative process was clearly unreasonable, petitioner's administrative proceedings lasted just five months, including his appeal to the BIA. Five months is well within administrative norms. *See Demore v. Kim*, 538 U.S. at 529 (noting that in cases in which aliens are detained pursuant to INA § 236(c) "removal proceedings are completed in an average time of 47 days" and when those decisions are appealed to the BIA, "appeal takes an average of four months"). Similarly, petitioner's first Petition for Review lasted just seven months, well within normal judicial appeal time. Unlike *Tijani*, it appears from the Administrative Record that petitioner's second Petition for Review is responsible for the duration of his continued detention. Accordingly, the Court finds that petitioner's due process claims are attenuated.

REPORT AND RECOMMENDATION
PAGE -10

Petitioner also contends that he is entitled to be released under *Nadarajah*, 443 F.3d at 1079-80, because there is no significant likelihood of removal in the reasonably foreseeable future. (Dkt. #1 at 2). In *Nadarajah*, the petitioner, detained pursuant to the "general immigration statutes," INA § 235(b)(1)(B)(ii)[2] and 235(b)(2)(A)[3], challenged the agency's denial of parole. *Id.* at 1075-76. The Immigration Judge had already granted the petitioner deferral of removal under the CAT (which was unchallenged), and asylum (which had been affirmed by the BIA). Despite having prevailed on his application for relief at every administrative level, Nadarajah had been detained for five years pending a determination of removability. Relying on the Supreme Court's analysis in *Zadvydas*, the Ninth Circuit held that "the general immigration detention statutes do not authorize the Attorney General to incarcerate detainees for an indefinite period." *Id.* at 1078 (*citing Zadvydas*, 533 U.S. at 678). The Ninth Circuit concluded that there was no likelihood of removal in the reasonably foreseeable future in light of the fact that the petitioner had been awarded asylum twice and protection under the CAT. *Id.* at 1080-81.

In *Nadarajah*, however, there was a strong indication that removal was not practically attainable because Nadarajah had been granted deferral of removal under the CAT (which was unchallenged) and asylum (which had been affirmed by the BIA). Thus, there was no evidence that he would be removed in the reasonably foreseeable future. Here, by contrast, petitioner did

---

[2] "If the [asylum] officer determines at the time of the interview [upon arrival in the United States] that an alien has a credible fear of persecution . . ., the alien shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii).

[3] "[I]n the case of an alien who is an application for admission, if the examining officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under 8 U.S.C. § 1229a." 8 U.S.C. § 1225(b)(2)(A).

REPORT AND RECOMMENDATION
PAGE -11

01 not prevail at the administrative level but was found removable by an Immigration Judge, and his

02 appeals were denied by the BIA, and dismissed by the Ninth Circuit. Moreover, unlike Nadarajah,

03 the length of petitioner's detention is not due to the Attorney General's delay, but to his second

04 Petition for Review and related stay of removal. Once the Ninth Circuit decides his case,

05 petitioner will either be released or removed to El Salvador. In light of these facts, petitioner has

06 not demonstrated that there is no significant likelihood of removal in the reasonably foreseeable

07 future. Accordingly, the habeas petition should be denied as petitioner's detention is lawful and

08 authorized by statute.

## IV. CONCLUSION

10 For the foregoing reasons, I recommend that respondents' motion to dismiss be granted,

11 and that the action be dismissed. A proposed Order accompanies this Report and

12 Recommendation.

13 DATED this 23rd day of January, 2008.

Mary Alice Theiler
United States Magistrate Judge